**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

SANDRA J.,[1]
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 2:25-cv-00331
Sargus, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Sandra J. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response (Doc. 9), and plaintiff's reply (Doc. 10).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI in February 2022, alleging disability as of March 15, 2006, due to post traumatic stress disorder (PTSD), chronic neck pain, migraines, elevated ALT measurement, lumbar spondylosis, degenerative disc disease, bone spurs, and depression. (Tr. 701-714; *see also* Tr. 748). Her applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing again before ALJ Francine Serafin. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on February 6, 2024. (Tr. 108-35). On April 24, 2024, the ALJ issued a decision denying plaintiff's applications. (Tr. 13-36). On January 29,

[1] Pursuant to General Order 22–01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

2025, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).[2] The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2007.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since March 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> [Plaintiff] has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, spondylosis/radiculopathy, neuropathy, status post cervical fusion, osteoarthritis, status post ulnar release bilaterally, status post A-1 pulley release procedure on thumb of the right upper extremity, post-traumatic disorder, bipolar disorder, general anxiety disorder, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Report and Recommendation.

> 4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs; she can never climb ladders, ropes and scaffolds. She can frequently balance, stoop, kneel, crouch, but never crawl. She must avoid exposure to excessive vibration. She should avoid exposure to any workplace hazards such as moving machinery or unprotected heights. She is capable of frequent fingering, handling, and feeling with the bilateral upper extremities. She is capable of performing simple, routine, repetitive work tasks that involve one-to-three steps that are not at an assembly line or production pace or involving any strict production quotas. She is capable of tolerating occasional interaction with supervisors, coworkers, and the public. She is capable of performing work tasks that do not require any teamwork tasks or over the shoulder supervision. She is capable of managing a few changes in the work routine defined as three to four changes per workday or work shift.
>
> 5. [Plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).
>
> 6. [Plaintiff] was born [in]… 1977, and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).[3]
>
> 7. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).
>
> 8. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).
>
> 9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[4]
>
> 10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from March 15, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-31).

---

[3] Plaintiff was 46 years old at the time of the ALJ's decision. (Tr. 23).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as merchandise marker (164,000 jobs nationally), router (22,000 jobs nationally), and office helper (6,000 jobs nationally). (Tr. 30-31, 129-30).

### A. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### B. Relevant Evidence

#### *1. Plaintiff's Testimony*

The ALJ considered plaintiff's testimony, stating:

> She has a lower back problem. After two minutes, she feels like her back is ripping apart. She has this pain every day. If she gets up, it worsens. She has problems stooping or bending because of pain from her lower back. She has had shock and other modalities. She is taking medication and is in bed most of the time. She can walk only two minutes before she has back pain. She can stand two minutes before having to sit. She can sit three to four minutes. She has to lay flat most of the day. She has a problem in her neck area—when she sits up or standing, it causes migraine headaches. She goes through her pills in three days. She has headaches three to four times a day, that lasts between four and five hours each. Her migraines cause nausea and sensitivity to light. She has to lie down. She is on a medication for this. She has a history of neck surgery. She has issues with range of motion – turning side-to-side. Her neck pain travels down her arms. When it hurts, she drops things. She has right knee problems. When she awakes, it is dislocated. She has swelling and stiffness. She has had an MRI on her knee. She has problems bending her knee and climbing stairs. She has problems with it locking up when bending or stooping. She has to elevate her legs over half the day, and she wears a special brace with metal. She has a history of bladder cancer, but she has continued problems. She has been seeing blood. When she coughs, it leaks. She has to go the restroom five more times than normally, so she tries to stay close to the restroom. She is on a medication for this. She has had hand surgery on her right hand—it hurts all the time and goes numb. Her trigger finger still has problems. She has problems using her right hand and she is right-handed, and it hurts to write her name. She suffers from anxiety—crowds, loud noises, and a bunch of talking are triggers; she has trouble going out in public. She avoids the grocery store—she cannot breathe; she breaks out in sweats and hives. Her panic attacks last until she leaves the environment. She suffers from depression, and she has problems with her concentration and memory. She has problems with her short-term memory and needs special reminders. Her dad helps her a lot. She has problems focusing. She gets distracted doing tasks. Her pain is distracting. She spends a lot of time in the day to get comfortable. She has problems with her sleep –some days, she does not sleep at all because of her pain.

(Tr. 23-24).

*2. Treatment Records*

The ALJ considered exam findings and other evidence in the record relating to plaintiff's severe impairments. The ALJ noted that beginning in 2019, diagnostic imaging revealed the following spinal pathology: narrowing of the cervical spinal canal, degenerative disc disease in the lower back, herniated cervical disc, and nerve damage affecting both arms. (Tr. 24, citing

Exhibit 36F). A May 2018 lumbar spine MRI showed mild degeneration, most pronounced at L5-S1, without significant stenosis at that time (Exhibit C6F). (*Id.*). A May 2019 CT scan demonstrated multilevel spondylosis with a disc-spur complex at C6-7 causing mild to moderate stenosis on the right side, while July 2018 electrodiagnostic testing confirmed moderate to severe left ulnar neuropathy and moderate right ulnar neuropathy. (*Id.*).

The ALJ noted that plaintiff's physical examinations in late 2019 and 2020 were largely unremarkable, with normal findings across multiple body systems. (*Id.*, citing Exhibits C1F, C2F). However, the ALJ observed that by April 2022, plaintiff's exams indicated that her functional status had altered: she was using a cane for mobility, exhibited right foot drop, and walked with a limp. (Tr. 25, citing Exhibit C5F). She reported chronic thoracic and low back pain with muscle cramps radiating bilaterally down her legs, multiple weekly headaches, and osteoarthritis of the knees. (*Id.*, citing Exhibit C5F). Mental health assessment revealed moderately severe depression and poor grooming, though her cognitive function remained intact. (*Id.*, citing Exhibit C13F).

The ALJ considered May 2022 imaging studies showed postsurgical changes from cervical fusion at C6-7, mild spinal stenosis at C5-6, and a small disc herniation at L5-S1 with focal degenerative changes. (Tr. 25-26, citing Exhibit C7F). These findings represented no significant change from June 2020 imaging (Tr. 26, citing Exhibit C7F); however, the ALJ noted that by November 2022, plaintiff required a spinal cord stimulator trial for chronic pain syndrome (*Id.*, citing Exhibit C11F).

The ALJ also considered records from 2023 and early 2024, noting additional conditions: bladder cancer diagnosis with subsequent negative cystoscopy and urinary incontinence (Exhibit C16F), and confirmed osteoarthritis of the right knee. (*Id.*, citing Exhibits C17F, C18F). A

February 2024 examination also revealed knee tenderness, though plaintiff maintained 130 degrees of flexion and could perform straight leg raises with 4/5 motor strength. (*Id*., citing Exhibit C18F). The ALJ noted that plaintiff "was assessed with unilateral primary osteoarthritis of the right knee with instructions to weight-bear, range of motion, and activity as tolerated, elevate her legs after activity to decrease swelling, use over-the-counter NSAIDs, and perform home stretching and strengthening." (*Id*., citing Exhibit C18F).

**C. Specific Errors**

Plaintiff alleges four assignments of error. First, plaintiff alleges the ALJ erred in evaluating the persuasiveness of the opinions of consultative examiners Anas Minkara, M.D., and Ryan R. Wagner, Psy.D. Specifically, plaintiff argues that because the ALJ found Dr. Minkara's opinion partially persuasive, the ALJ erred by omitting limitations on sitting, standing, walking, reaching, and manipulative activities from the residual functional capacity determination, and failing to adopt or explain her reasons for rejecting Dr. Minkara's opinion that plaintiff was limited in her ability to reach and perform overhead activities. (Doc. 8 at PAGEID 3338-41). Plaintiff contends that the latter error was not harmless because all three occupations identified at step five—marker, router, and office helper—require frequent reaching. (*Id.*). Second, plaintiff argues that the ALJ failed to properly evaluate Dr. Wagner's opinion under the mandatory factors of supportability and consistency, thereby precluding meaningful judicial review. (*Id.* at PageID 3343). Third, plaintiff alleges the ALJ failed to resolve a reasoning level conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT). (*Id.* at PageID 3344). Fourth, plaintiff appears to preemptively argue that the ALJ cannot rely upon Emergency Message 21065 to completely prohibit any consideration of certain parts of the DOT, such as reasoning level. (*Id.* at PageID 3349).

**E. Analysis**

**1. Medical Opinions**

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence. Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20

---

[5] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

**a. Dr. Minkara**

*i. Examination and Opinion*

Dr. Minkara consultatively examined plaintiff for disability purposes on September 24, 2022. (Tr. 2906-17). Plaintiff complained she was disabled due to chronic neck and back pain with radiculopathy, depression, anxiety and PTSD. (Tr. 2906). Dr. Minkara described plaintiff's history of present illness, noting:

> Chronic neck and back pain with radiculopathy: patient report her back pain began in 2001. She reports this was a result of trauma and injury during abusive relationships. Her symptoms include pain with singing (sic) or walking. She feels that her lower back is "ripping apart." Laying down improved her symptoms, while standing, walking, and sitting worsen it. She takes meloxicam PRN for the pain. She has undergone prior x-rays which she reports demonstrated degenerative disc disease. She reports pain and numbness radiating from [] the lower back to the buttock, bilateral thighs along the lateral aspect, anterior knee, to the dorsal feet involving the middle 3 toes. As for her neck pain, it began in 2017 as a result of abuse. She reports neck pain which feels like it is being "ripped off[]", standing, and walking horse in (*sic*) [worsen] it. She reports undergoing a prior neck surgery. [S]he takes baclofen daily for her muscle spasms, and uses topical lidocaine patches. She reports pain and numbness from the neck to the shoulder extending to the palmar hands, including all 5 digits. Depression, anxiety, PTSD: patient reports this resulted due to abusive relationships and traumas. She is currently on aripiprazole which she takes daily.

(Tr. 2906). Dr. Minkara observed:

> With regards to her cervical pain, clinical exam today demonstrated diminished active range of motion of the cervical spine. Her symptoms are also consistent with cervical radiculopathy in a (*sic*) bilateral upper extremities. She also has a positive Spurling sign. As for her lower back pain, her symptoms are consistent with lumbar radiculopathy. Her history of lumbar spondylosis is corroborated by the medical documentation provided. Additionally, there are symptoms of lumbar radiculopathy in the bilateral lower extremities. This is consistent with the bilateral positive straight leg raise. Patient also demonstrated antalgic gait with use of a cane.

(Tr. 2910). Dr. Minkara opined on plaintiff's functional limitations:

> [T]he claimant had mild limitations sitting because of cervical and lumbar pain with radiculopathy. The claimant has mild limitations with standing, walking, lifting, and carrying heavy weights due to cervical and lumbar pain with radiculopathy.
>
> The claimant does not use an assistive device with regard to short distances, long distances, or uneven terrain.[6] There were mild limitations with bending, stooping, crouching, and squatting due to cervical and lumbar pain with radiculopathy. There were mild limitations with reaching and overhead activities. There are no limitations with grasping or handling.
>
> Claimant has no relevant visual or communicative issues. There are relevant workplace limitations due to cervical and lumbar pain with radiculopathy.

(Tr. 2910-11). The ALJ found Dr. Minkara's opinion to be partially persuasive, briefly stating:

> The examiner has an exam to support the opinion and it generally supports a light range work restriction. However, a totality of the medical evidence of record is more consistent with some manipulative limitations because of the claimant's right upper extremity impairment.

(*Id.*).

*ii. Arguments*

Plaintiff argues the ALJ erred because "despite finding persuasive Dr. Minkara's opinion that [plaintiff] had 'relevant workplace limitations' in her ability to sit, the ALJ found no limitations on [plaintiff]'s ability to sit during the workday by, for example, allowing for a

[66] It appears this statement may be a typographical error as Dr. Minkara stated, "Patient also demonstrated antalgic gait with use of a cane." (Tr. 2910; *see also* Tr. 2913).

sit/stand option." (Doc. 8 at PAGEID 3338, citing Tr. 22). Plaintiff further argues that the "ALJ also failed to adopt or reject and explain her reasons for rejecting Dr. Minkara's opinion that [plaintiff] was limited in her ability to reach and perform overhead activities," and the "error is not harmless, because all three of the occupations the ALJ identified at step five, marker, router, and office helper, require frequent reaching." (Doc. 8 at PAGEID 3341).[7]

In response, the Commissioner argues that the ALJ properly evaluated and explained her consideration of Dr. Minkara's consultative opinion. The Commissioner emphasizes that the ALJ found Dr. Minkara's opinion only "partially persuasive"—not fully persuasive—and therefore was not required to adopt every limitation Dr. Minkara assessed.

As an initial matter, the Court notes that the parties' arguments revolve around the interpretation of the ALJ's brief persuasiveness analysis that Dr. Minkara "has an exam to support the opinion and it generally supports a light range work restriction" but "the totality of the medical evidence of record is more consistent with some manipulative limitations because of the claimant's right upper extremity impairment." (Tr. 27). Plaintiff interprets the ALJ's statement to mean that "the ALJ found that Dr. Minkara's opinion was persuasive apart from her opinion that [plaintiff] had no manipulative limitations" and therefore should have explained why she failed to adopt the other limitations upon which Dr. Minkara opined. (Doc. 10 at PageID 3377, citing Tr. 27 (emphasis omitted)). Based on this interpretation, plaintiff argues that the ALJ erred by failing to include limitations on sitting, standing, walking, reaching, and overhead activities in the RFC finding. (Doc. 8 at PageID 3339, 3341). The Commissioner counters that the ALJ found Dr. Minkara's opinion partially persuasive "only to the extent the

[7] *See* DOT 209.587-034 (marker), 1991 WL 67180; DOT 222.587-038 (router), 1991 WL 672123; DOT 239.567-010 (office helper), 1991 WL 672232.

limitations were generally consistent with light work and some manipulative limitations," and therefore was not required to adopt the opinion verbatim. (Doc. 9 at PageID 3363, citing Tr. 27).

The Court finds that the ALJ's persuasiveness analysis of Dr. Minkara's opinion is insufficiently articulated to permit meaningful judicial review. The ALJ's statement that Dr. Minkara "has an exam to support the opinion and it generally supports a light range work restriction" but "the totality of the medical evidence of record is more consistent with some manipulative limitations because of the claimant's right upper extremity impairment" is ambiguous and susceptible to multiple reasonable interpretations. (Tr. 27). The phrase "generally supports a light range work restriction" does not clearly indicate whether the ALJ found Dr. Minkara's opinion persuasive in its entirety except for the manipulative limitations component, or whether the ALJ found the opinion persuasive only in the limited sense that it was consistent with light work as a general exertional category. (*Id.*). Similarly, the ALJ did not specify which particular limitations opined by Dr. Minkara she found persuasive or unpersuasive, nor did she explain why specific limitations—such as those regarding sitting, standing, walking, reaching and overhead activities—were or were not incorporated into the RFC finding. Without such specificity, the Court cannot determine whether the ALJ properly considered and accounted for Dr. Minkara's opinion or follow the ALJ's path of reasoning in formulating the RFC.

The Commissioner argues that "[b]y referencing the totality of the medical evidence of record, which she had already discussed in her decision, the ALJ specifically articulated the consistency factor, as required by the relevant regulations." (Doc. 9 at PageID 3363, citing Tr. 27). The Court disagrees and finds the ALJ's consistency analysis lacking. "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The entirety of the ALJ's consistency analysis is as follows: "[A] a totality of the medical evidence of record is more consistent with some manipulative limitations because of the claimant's right upper extremity impairment." (Tr. 27). This does little to *explain* the consistency between Dr. Minkara's other opined limitations, aside from any manipulation limitations, and the record evidence. The ALJ does not cite a single piece of record *medical evidence* in this part of her decision demonstrating that Dr. Minkara's opinion on, for example, plaintiff's ability to reach or perform overhead activities is inconsistent with the rest of the record.

In addition, the ALJ does not adequately explain her consistency conclusion elsewhere in the decision. *See Booker R. v. Comm'r of Soc. Sec.*, No. 3:22-cv-00170, 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023). The Court is unable to discern from the ALJ's decision how the medical records relating to plaintiff's capacity to walk, stand, or sit that the ALJ highlights in her decision are inconsistent with Dr. Minkara's opinion. While the ALJ's review of plaintiff's treatment records noted certain "normal findings" and "physical examinations in late 2019 and 2020 [that] were largely unremarkable," imaging studies revealed "multilevel spondylosis with a disc-spur complex," and treatment records documented that the plaintiff experienced right foot drop, ambulated with a limp, and occasionally required a cane for mobility. (Tr. 24). Although the ALJ recounted these records neutrally, she made no attempt—either in this summary or in her subsequent evaluation of the opinion evidence—to reconcile the objective findings with the restrictions Dr. Minkara imposed or to explain why she deemed those findings inconsistent with the stated restrictions. *Cf. Daniels v. Comm'r of Soc. Sec.*, No. 1:13-cv-1044, 2014 WL 1304940, *12 (N.D. Ohio March 27, 2014) ("ALJ's discussion of the medical evidence was not

merely a rote recitation of [p]laintiff's longitudinal history; rather the ALJ analyzed the medical evidence and explained how it supported his ultimate RFC determination."). In comparison, plaintiff points to evidence in the record that supports Dr. Minkara's opined walking limitations:

> Dr. Minkara noted that a straight leg raising test was positive in the seated and supine positions, and [plaintiff] had an antalgic gait and used a cane at her examination (R. 2910). Consultative psychological examiner, Tawnee Tanner, Psy.D., observed [plaintiff] to be using a cane (R. 2097). Consultative examiner Stephen Nutter, M.D., likewise observed [plaintiff] to have a "slightly limping gait with a cane in her right hand" (R. 2106). Consultative examiner Ryan R. Wagner, Ph.D., noted that "[plaintiff] ambulated with difficulty" (R. 2922). Physical examinations throughout the record noted that [plaintiff] had an antalgic gait and used a cane for ambulation (R. 2132-33, 2423, 2442, 2495, 2847, 2849, 2960).

(Doc. 8 at PageID 3339).

Further, the ALJ did not identify what specific evidence contradicted the reaching and performing overhead activity restrictions opined by Dr. Minkara, nor explain why the limitations in an opinion she found "partially persuasive" were excluded. *See Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-cv-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020) ("[I]f the ALJ accepts a medical opinion but does not include a restriction recommended by that expert in the RFC, the ALJ must explain why he did not do so."). Under 20 C.F.R. § 404.1520c(b)(1), the ALJ need not discuss every statement individually, but she must articulate a clear rationale. Here, the rationale is incomplete: the ALJ's general reference to "the totality of the evidence" does not allow the Court to trace the path of her reasoning, particularly where the omitted limitations could be outcome-determinative. (Tr. 27).

The Commissioner responds that the ALJ properly accounted for the "mild" limitations opined by Dr. Minkara "by restricting plaintiff to a reduced range of light work with [] postural, manipulative, and environmental limitations." (Doc. 9 at PageID 3364). Specifically, the Commissioner points out that the ALJ restricted plaintiff to a reduced range of light work with

the following postural, manipulative, and environmental limitations: frequently (not constantly) climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently (not constantly) balance, stoop, kneel, and crouch; never crawl; avoid exposure to excessive vibration; avoid exposure to any workplace hazards such as moving machinery or unprotected heights; and frequent (not constant) fingering, handling, and feeling with the bilateral upper extremities. (Doc. 9 at PageID 3364, citing Tr. 22). But none of the limitations noted by the Commissioner specifically address the limitations on standing, walking, lifting, reaching, or performing overhead activity opined by Dr. Minkara. *See* SSR 83-10, at *5-6, 1983 WL 31251 (describing jobs in the light work category as "require[ing] a good deal of walking or standing" and "off and on, for a total of approximately 6 hours of an 8-hour workday."). Further, while the ALJ acknowledges Dr. Minkara's opined limitations for reaching and overhead activity, she does not address them further or explain how she considered them.

In sum, the ALJ's analysis of Dr. Minkara's opinion for persuasiveness does not permit meaningful judicial review. In addition, the ALJ failed to properly analyze the consistency of Dr. Minkara's opinion. As such, the ALJ's decision regarding this medical opinion is not based on substantial evidence, and the decision should be reversed and remanded for re-evaluation of Dr. Minkara's opinion.

**b. Dr. Wagner**

*i. Examination and Opinion*

In reviewing Dr. Wagner's opinion, the ALJ summarized:

> Consultative examiner, Ryan R. Wagner, Psy.D., examined the claimant on October 24, 2022, and upon mental status exam, found the following: ". . . [plaintiff] was cooperative, and rapport was adequately established. She was dressed casually. Her grooming and hygiene were adequate. [Plaintiff] ambulated with difficulty but did not use an assistive device. She did not appear to be in

> physical discomfort. She appeared to put forth adequate effort required to complete the evaluation process. Her level of understanding was adequate. She had consistent eye contact during the interview . . . . She was able to track the conversation without significant difficulty . . . displayed a rate of speech that was within normal limits . . . not display loose associations. . . . obsession, compulsions, delusions, or hallucinations . . . level of intellectual functioning appeared to fall below normal . . . judgment is sufficient for her to make decisions . . . " In the functional assessment, the examiner opined that the claimant's performance was not suggestive of difficulty understanding instruction; her short term memory task was not suggestive of difficulty remembering instructions; she did not have difficulty understanding and responding to questions; the claimant reported problems learning work task[s] including difficulty learning new information and following instructions; she was able to follow the conversation during the interview did not ask the regular repetition of questions; she had difficulty completing tasks assessing attention suggestive of difficulty with concentration and focus; her level of energy was below average; she presented is highly anxious that might impact her mood stability in a competitive work setting; her presentation was indicative of intellectual limitations that might negatively impact her ability to manage normal work pressures (Exhibit 10F).

(Tr. 27). The ALJ found Dr. Wagner's opinion to be partially persuasive, stating only:

> This opinion is somewhat persuasive. The examiner has an exam to support the opinion. However, the opinion was not expressed in the vocationally relevant terminology.

(*Id.*).

*ii. Arguments*

Plaintiff argues that "[t]he ALJ's lack of explanation in evaluating Dr. Wagner's opinion precludes meaningful judicial review." (Doc. 8 at PageID 3343). Plaintiff further contends the ALJ erred because she "did not discuss how consistent or inconsistent she found Dr. Wagner's opinion to be with the other record evidence, or how this factored into her finding that Dr. Wagner's opinion was 'somewhat persuasive.'" (*Id.* at PageID 3344; Doc. 10 at PageID 3381). The Commissioner responds by arguing that Dr. Wagner's statements do not qualify as a medical opinion because he did not assess what "[p]laintiff can do despite her impairments" and, therefore, his opinion is not subject to a persuasiveness analysis. (Doc. 9 at PageID 3369-70

(quotations omitted), citing 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)). The Commissioner further argues that because the ALJ found Dr. Wagner's opinion "was not expressed in [] vocationally relevant terminology" she was not required to include functional limitations based on the opinion. (Doc. 9 at PageID 3374, citing Tr. 27).

Contrary to the Commissioner's argument, the ALJ characterized Dr. Wagner's report as "opinion" evidence and evaluated it for persuasiveness, finding it "somewhat persuasive." (Tr. 27). As such, the Commissioner's opposing argument amounts to an impermissible *post-hoc* rationalization of the ALJ's determination. *See Williams v. Comm'r of Soc. Sec.*, 227 F. App'x. 463, 464 (6th Cir. 2007) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (a reviewing court, in assessing the decision of an administrative agency, must judge its propriety solely by the grounds invoked by the agency).

Further, the cases the Commissioner relies upon for this premise are distinguishable in that the ALJs in those cases expressly stated that they found the medical opinions in question to be "vague" and reasonably explained their reasoning for discounting them. (Doc. 9 at PageID 3371, citing *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018) and *Epps v. Comm'r of Soc. Sec. Admin.*, 2024 WL 3184466, at *11 (N.D. Ohio June 4, 2024), *report and recommendation adopted*, 2024 WL 3179664 (N.D. Ohio June 26, 2024)). That is not the case here. The ALJ did not describe Dr. Wagner's opinion as vague, and she did not provide any discernible explanation indicating that she did not consider it a medical opinion. (Tr. 27). Further, as to the ALJ's statement that Dr. Wagner's opinion lacked "vocationally relevant terminology," "it may fall to the ALJ to 'convert[ ] and incorporate[ ]' the limitations set forth in a medical opinion 'into vocationally relevant terms'—i.e., terms that are relevant and meaningful in the DOT/SCO and/or the VE's own vocational experience—before including those limitations

in a hypothetical posed to a VE." *Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-cv-2370, 2022 WL 721455, at *16 (N.D. Ohio Jan. 13, 2022) (quoting *Modro v. Comm'r of Soc. Sec.*, No. 2:18-cv-900, 2019 WL 1986522, at *7 (S.D. Ohio May 6, 2019)) (alterations in original), *report and recommendation adopted*, 2022 WL 716105 (N.D. Ohio Mar. 10, 2022).

The Court disagrees with the Commissioner's alternative argument that "the ALJ did more than what was required of [her] and explained why [s]he found Dr. Wagner's statements only somewhat persuasive." (Doc. 9 at PageID 3370, citing Tr. 27). While an ALJ does not commit error simply by failing to use the terms "supportability" and "consistency" in her analysis, s*ee Terry Q. v. Comm'r of Soc. Sec*., 2022 WL 969560, at * 5 (S.D. Ohio March 31, 2022), the Court is simply unable to discern what part of Dr. Wagner's opinion the ALJ found persuasive (or not) and to what extent (if any) Dr. Wagner's opinion was consistent with the other record evidence. As such, the Court is unable to meaningfully review the ALJ's assessment of Dr. Wagner's opinion in accordance with 20 C.F.R. § 404.1520c(c)(1) and (2).

**C. Conclusion**

In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court concludes that the ALJ's persuasiveness analysis of Drs. Minkara and Wagner's opinions is not supported by substantial evidence. "The Court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Canty v. Comm'r of Soc. Sec*., No. 2:15-cv-2221, 2016 WL 5957679, at *3 (S.D. Ohio Oct. 14, 2016) (Sargus, J.) (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Here, the ALJ failed to build an accurate and logical bridge from the evidence to her conclusions in evaluating

the opinions of the consultative examiners. Therefore, plaintiff's first and second assignments of error should be sustained and this matter reversed and remanded for further proceedings.

**2. Vocational Expert's Testimony and the DOT Standards**

Because the ALJ's persuasiveness analysis of the opinions of Drs. Minkara and Wagner lacks substantial evidentiary support, the Court need not address the vocational errors identified by plaintiff as errors three and four. As plaintiff acknowledges in her brief (Doc. 8 at PageID 3348), the remedy for these alleged vocational errors would also be a remand for further proceedings.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's Statement of Specific Errors (Doc. 8) be **SUSTAINED** and the Commissioner's non- non-disability finding be **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Report and Recommendation.

Date: 11/1/2025

Karen L. Litkovitz
Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SANDRA J.,<br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | Case No. 2:25-cv-00331<br>Sargus, J.<br>Litkovitz, M.J. |

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).